IN THE UNITED STATES DISTRICT COURT FOR THE
SOUTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

PHILLIP SPENCER,                           :
(AIS #232063)
                                           :
    Plaintiff,
                                           :
vs.                                            CIVIL ACTION 10-00555-WS-N
                                           :
ANTHONY WILLIAMS, et al.,
                                           :
    Defendants.

REPORT AND RECOMMENDATION

Plaintiff, an Alabama prison inmate proceeding *pro se* and *in forma pauperis* filed a Complaint under 42 U.S.C. § 1983. This action was referred to the undersigned pursuant to 28 U.S.C. § 636(b)(1)(B) and Local Rule 72.2(c)(4), and is now before the undersigned on Defendants' motion for summary judgment (Docs. 39, 40, and 77), Plaintiff's responses filed in opposition thereto (Docs. 51, 52, 55, and 74), and Plaintiff's Motion for Summary Judgment. (Docs. 47, 49, 53). For the reasons stated below, it is recommended that Defendants' motion for summary judgment be **granted in part, and denied in part**, as set forth herein, and that Plaintiff's motion for summary judgment be **denied.**

I.   SUMMARY OF FACTUAL ALLEGATIONS

From its review of the record, the Court summarizes the parties' allegations which are material to the issues addressed in this Report and Recommendation.[1] On May 20, 2010, while

---

[1] The "facts, as accepted at the summary judgment stage of the proceedings, may not be the actual facts of the case." Priester v. City of Riviera Beach, Fla., 208 F.3d 919, 925 n.3 (11th Cir. 2000) (citations and internal quotation marks omitted). Nevertheless, for summary judgment purposes, the Court's analysis begins with a description of the facts in the light most favorable to the nonmoving party. See McCullough v. Antolini, 559 F.3d 1201, 1202 (11th Cir. 2009).

incarcerated at Holman Correctional Facility ("Holman"),[2] Plaintiff came to the attention of Assistant Shift Commander, Sergeant Michael Everette, when Everette received information that Plaintiff was in possession of a prison made knife which he was planning to use to take a stolen cell phone from another inmate. (Doc. 40, att. 1 at 3, 8-9). Sometime before 5:30 p.m., Sergeant Everette and Correctional Officer Bennie Ashby entered Housing Unit B in search of Plaintiff. (Id. at 5). Upon entering Unit B, Sergeant Everette called out Plaintiff's name, and Plaintiff began walking toward the front of the unit. (Id. at 3-5). Sergeant Everette ordered Plaintiff to stop, and Plaintiff reached down toward his boot and threw a knife over the center wall. (Id. at 3). Sergeant Everette instructed Officers Ashby and James Sizemore to get Plaintiff and escort him out of the unit while he retrieved the knife. (Id.).

As the officers were leaving the unit with Plaintiff, Plaintiff began arguing and refused to walk. (Id. at 3-4). Sergeant Everette ordered Plaintiff to walk to the shift commander's office, and Plaintiff refused. (Id. at 5). Sergeant Everette pushed Plaintiff in his back, and Plaintiff turned and struck him several times in the side of the head. (Id. at 4-5). Sergeant Everette sprayed Plaintiff in the face with a chemical agent, Freeze Plus P, and Plaintiff struck him again in the head. (Id.). Sergeant Everette then forcibly threw Plaintiff to the floor[3] and issued a "Code Red" alert. (Id.). Plaintiff continued to fight despite multiple commands to cease resisting. (Id.). Officer Ashby then drew his baton and struck Plaintiff several times in the area of his left shoulder and left leg. (Id.). Defendant Correctional Officer Russell Johnson and Correctional Officer Joel Broadhead arrived and took control of Plaintiff and placed him in handcuffs. (Id. at

---

[2] Plaintiff is serving a life sentence without the possibility of parole for a 2003 conviction of capital murder and robbery in the death of an eighteen-year-old college student in Birmingham, Alabama. (N.D. Ala. Action No. 09-cv-01270-IPJ-HGD, Doc. 7, att. 1).

[3] According to Sergeant Everette, as Plaintiff was thrown to the floor, his face struck the side of the concrete curb that runs along the side of Housing Unit B. (Doc. 40, att. 1 at 4).

4).  At that time, Plaintiff ceased resisting and the use of force ceased.  (Id.).

Following the altercation between Plaintiff and Sergeant Everette, Defendant Johnson, Defendant Correctional Officer John Long, and Defendant Correctional Sergeant Anthony Williams began to escort Plaintiff away from the housing unit to the prison health care unit.  (Id. at 7).  According to Plaintiff, as they approached the "S-9 gate," Defendant Johnson said, "you sw[u]ng a knife at my sergeant," and then rammed Plaintiff's face into the bars.  (Doc. 1 at 4; Doc. 52 at 2).  Defendant Long then "push[ed] [him] forward" to the door, and Defendants Johnson and Williams began "beatin[g] [him] down."  (Doc. 1 at 4; Doc. 64 at 2).  They then took him to the health care unit.  (Id.).

Defendants Johnson, Long, and Williams maintain, however, that, as they attempted to escort Plaintiff away from the housing unit, he again became disruptive, uncooperative, and loud, and, as they approached the S-9 gate, he began kicking, screaming, and yelling, "I'm not going to seg."  (Doc. 40, att. 1 at 7; Doc. 40, att. 3 at 2; Doc. 40, att. 2 at 2; Doc. 40, att. 4 at 2).  Plaintiff then attempted to pull away, and Defendants Johnson and Long threw him to the floor.  (Id.).  When he ceased resisting, Defendants lifted him up and escorted him to the health care unit.  (Id.).

Upon arrival at the health care unit at 5:30 p.m., the nurse completed a body chart on which she noted an abrasion on Plaintiff's lower back and left knee, a laceration on his left shoulder, a laceration on the right side of his face between the upper lip and nose, blood in his nose and mouth, a "teeth mark" on the inner upper lip, and cuts on both wrists.  (Doc. 77, att. 2 at 21).  The nurse further indicated that she was unable to control the bleeding on the right side of his face from a jagged laceration.  (Id.).  As a result, at 5:55 p.m., Plaintiff was taken to the Atmore Community Hospital for further treatment and evaluation.  (Id.; Doc. 77, att. 3 at 45).

Upon arrival at the hospital, the medical staff noted uncontrolled bleeding, a one-inch

laceration to Plaintiff's right upper lip, for which he received stitches, and a contusion on his right wrist.  (Doc. 77, att. 3 at 44-45).   X-rays of Plaintiff's right wrist and left hand revealed no fracture or dislocation.   (Doc. 77, att. 2 at 32-33).   Likewise, a CT scan of Plaintiff's face revealed no fracture, with moderate fluid or swelling in both nasal passages.   (Id. at 34).

Plaintiff returned to the prison at 9:41 p.m. and was placed in the prison infirmary for observation.   (Doc. 77, att. 3 at 40-41).   In the following weeks, Plaintiff continued to see a private physician for complaints that he was having difficulty breathing through his nose.  (Doc. 53 at 3; Doc. 77, att. 3 at 12-14, 18).   On November 15, 2010, Plaintiff had sinus surgery to correct nasal scarring, obstruction, congestion, and drainage problems.   (Doc. 77, att. 3 at 9, 11).   On February 10, 2011, the prison physician noted that Plaintiff was much improved since the sinus surgery.   (Doc. 77, att. 2 at 35).   To date, Plaintiff continues to complain of nasal congestion.  (Doc. 77, att. 1 at 33, 46).

## II.   PROCEDURAL ASPECTS OF THE CASE

On October 8, 2010, Plaintiff filed the present § 1983 action, alleging that Defendant Johnson violated his Eighth Amendment rights by using excessive force against him when he rammed Plaintiff's face into the bars at the S-9 gate; that Defendant Long violated his Eighth Amendment rights by "push[ing] [him] forward to [the] 3 cube door;" and that Defendants Johnson and Williams violated his Eighth Amendment rights by "beatin[g] [him] down" at the S-9 gate.   (Doc. 1 at 4).   In his request for relief, Plaintiff seeks compensatory and punitive damages.  (Id. at 7).

In the Special Report and Answer filed on behalf of Defendants on April 6, 2011, Defendants deny Plaintiff's allegations and assert various defenses, including absolute and

qualified immunity.[4]  (Docs. 39, 40).  On April 18, 2011, Plaintiff filed a motion for summary judgment, which he supplemented on April 22, 2011, and April 29, 2011.  (Docs. 47, 49, 53).  On October 26, 2011, the Court ordered that Defendants' Special Report and Answer be treated as a motion for summary judgment.  (Doc. 68).  On April 25, 2011, April 27, 2011, May 10, 2011, and July 13, 2011, Plaintiff filed responses in opposition to Defendants' motion for summary judgment.  (Docs. 51, 52, 55, 64, 65, 70, 74).  On December 20, 2011, the Court ordered Defendants to supplement their submission in support of their motion for summary judgment.  (Doc. 76).  On that same date, December 20, 2011, Defendants filed their supplemental submissions.  (Doc. 77).  The parties' motions for summary judgment and responses thereto are now before the Court.

### III. SUMMARY JUDGMENT STANDARD

In analyzing the propriety of a motion for summary judgment, the Court begins with these basic principles.  The Federal Rules of Civil Procedure grant this Court authority under Rule 56 to render "judgment as a matter of law" to a party who moves for summary judgment.  Federal Rule

---

[4] The three Defendants in this action are Alabama Department of Corrections officials.  However, it is unclear from Plaintiff's complaint whether he is suing these Defendants in their official capacities, individual capacities, or both.  Therefore, the Court will consider both.  As state officials, Defendants are entitled to absolute immunity from suit for damages in their official capacities.  See Harbert Int'l, Inc. v. James, 157 F.3d 1271, 1278 (11th Cir. 1998) (state officials sued in their official capacities are protected from suit for damages under the Eleventh Amendment).

   In addition, "[q]ualified immunity protects government officials performing discretionary functions from suits in their individual capacities unless their conduct violates 'clearly established statutory or constitutional rights of which a reasonable person would have known.'"  Dalrymple v. Reno, 334 F.3d 991, 994 (11th Cir. 2003) (quoting Hope v. Pelzer, 536 U.S. 730, 739 (2002)).  However, this Circuit has held that qualified immunity does not apply to an Eighth Amendment excessive force claim.  See Skrtich v. Thornton, 280 F.3d 1295, 1301 (11th Cir. 2002) ("In this Circuit, a defense of qualified immunity is not available in cases alleging excessive force in violation of the Eighth Amendment, because the use of force 'maliciously and sadistically to cause harm' is clearly established to be a violation of the Constitution by the Supreme Court decisions in Hudson and Whitley."); accord Dobbins v. Giles, 2012 WL 45397, *2 (11th Cir. 2012) (unpublished).  Because Plaintiff alleges such a violation, the only question remaining is whether he has alleged facts against each Defendant sufficient to survive the motion for summary judgment.  See Skrtich, 280 F.3d at 1301.

5

of Civil Procedure 56(a) provides that "[t]he court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." In Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986), the Supreme Court held that summary judgment is proper "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact. . . ." However, all of the evidence and factual inferences reasonably drawn from the evidence must be viewed in the light most favorable to the nonmoving party. Adickes v. S.H. Kress & Co., 398 U.S. 144, 157 (1970); Jackson v. BellSouth Telecomms., 372 F.3d 1250, 1280 (11th Cir. 2004).

    Federal Rule of Civil Procedure 56(e) further provides:

> If a party fails to properly support an assertion of fact or fails to properly address another party's assertion of fact as required by Rule 56(c), the court may:
>     (1) give an opportunity to properly support or address the fact;
>     (2) consider the fact undisputed for purposes of the motion;
>     (3) grant summary judgment if the motion and supporting materials--including the facts considered undisputed--show that the movant is entitled to it; or
>     (4) issue any other appropriate order.

Fed. R. Civ. P. 56(e).

    The party seeking summary judgment "always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of the 'pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any,' which it believes demonstrate the absence of a genuine issue of material fact." Celotex, 477 U.S. at 323. The movant can meet this burden by presenting evidence showing there is no dispute of material fact or by pointing out to the district court that the nonmoving party has failed to present evidence in support of some element of its case on which it bears the ultimate burden of proof. Id.

at 322-25.

Once the moving party has satisfied its responsibility, the burden shifts to the non-movant to show the existence of a genuine issue of material fact.  See Stabler v. Florida Van Lines, Inc., 2012 WL 32660, *5 (S.D. Ala. 2012) (citing Clark v. Coats & Clark, Inc., 929 F.2d 604, 608 (11th Cir. 1991)).  Summary judgment is proper when, "after an adequate time for discovery, a party fails to make a showing sufficient to establish the existence of an essential element of that party's case."  McDowell v. Brown, 392 F.3d 1283, 1288 (11th Cir. 2004) (citations and internal quotation marks omitted).  "[T]here is no issue for trial unless there is sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party. . . .  If the evidence is merely colorable, . . . or is not significantly probative, . . . summary judgment may be granted."  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 249-50 (1986) (internal citations omitted).  "After the nonmoving party has responded to the motion for summary judgment, the court must grant summary judgment if there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law."  AGSouth Genetics, LLC v. Cunningham, 2011 WL 1833016, *1-2 (S.D. Ala. 2011).

## IV.   DISCUSSION

Plaintiff seeks redress in this action pursuant to 42 U.S.C. § 1983 for an alleged constitutional deprivation arising out of an altercation between Plaintiff and Defendants on May 20, 2010, while Plaintiff was incarcerated at Holman Correctional Facility.  Section 1983 provides in pertinent part:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action

at law, suit in equity, or other proper proceeding for redress. . . .

42 U.S.C. § 1983 (1994).

The Eighth Amendment protects a prisoner from punishment that is cruel and unusual. Graham v. Connor, 490 U.S. 386, 394 (1989). Specifically, the Eighth Amendment "prohibits the unnecessary and wanton infliction of pain, . . . the infliction of pain totally without penological justification. . . , [and] the infliction of punishment grossly disproportionate to the severity of the offense." Ort v. White, 813 F.2d 318, 321 (11th Cir. 1987) (citing Rhodes v. Chapman, 452 U.S. 337, 346 (1981)).

In order to establish an Eighth Amendment claim, a plaintiff must prove both an objective and subjective component. First, Plaintiff must show that the alleged wrongdoing was objectively "harmful enough" to establish a constitutional violation, and, second, Plaintiff must show that "the officials act[ed] with a sufficiently culpable state of mind," *i.e.*, that they acted "maliciously and sadistically to cause harm." Hudson v. McMillian, 503 U.S. 1, 6-8 (1992).

"Under the Eighth Amendment, force is deemed legitimate in a custodial setting as long as it is applied 'in a good faith effort to maintain or restore discipline [and not] maliciously and sadistically to cause harm.'" Skrtich v. Thornton, 280 F.3d 1295, 1300 (11th Cir. 2002) (quoting Whitley v. Albers, 475 U.S. 312, 320-21 (1986)). The factors used to determine whether there has been a violation of the Eighth Amendment in the prison security context are: the need for the application of force, the relationship between that need and the amount of force used, the threat reasonably perceived, any efforts to temper the severity of a forceful response, and the extent of injury suffered. Hudson, 503 U.S. at 7 (citing Whitley, 475 U.S. at 321).

The courts recognize that corrections officials often must make decisions "'in haste, under pressure, and frequently without the luxury of a second chance.'" Hudson, 503 U.S. at 6 (citing

Whitley, 475 U.S. at 320).   Moreover, an inmate "is not at liberty to ignore or disobey, without consequence, the lawful orders of his custodians or the rules and regulations of a jail."  West v. Sconyers, 2010 WL 4822084, *7 (M.D. Ala. 2010) (unpublished).  "Strict adherence to rules and orders within a penal institution's walls are necessary for discipline, and even more importantly, for the safety and security of inmates, guards, and visitors alike."  Id.  However, "government officials may not use gratuitous force against a prisoner who has been already subdued or . . . incapacitated."  Skrtich, 280 F.3d at 1303 (citations omitted).  "The use of force must stop when the need for it to maintain or restore discipline no longer exists."  Id. at 1304 (citations omitted).

The issue before the Court now is whether, under the circumstances of this case, a jury could reasonably conclude that Plaintiff's rights under the Eighth Amendment were violated by any of the Defendants with respect to their use of force during the incident at the S-9 gate.   The Court will address Plaintiff's allegations against each Defendant below.

    A.  Eighth Amendment Claim Against Defendant Long.

First, with respect to Defendant Long, Plaintiff alleges in his complaint that, after Defendant Johnson rammed his face into the bars, Defendant Long "push[ed] [Plaintiff] forward to [the] 3 cube door."   (Doc. 1 at 4).   Plaintiff alleges no injury associated with the push and makes no other allegations of excessive force against Defendant Long.[5]

In order to establish the objective component of his Eighth Amendment excessive force claim, Plaintiff must prove that Defendant's wrongdoing was objectively "harmful enough" to establish a constitutional violation.  Hudson, 503 U.S. at 8.   This component "necessarily

---

5 While Defendant Johnson states that Defendant Long helped him take Plaintiff to the floor when they were struggling to gain control of Plaintiff at the S-9 gate (Doc. 40, att. 3 at 2), Plaintiff does not allege that Defendant Long used excessive force in that regard.   Plaintiff's only allegation of excessive force against Defendant Long is that Long "push[ed]" him "forward to [the] door" after the alleged face-ramming incident.   (Doc. 1 at 4; Doc. 55 at 3).

excludes from constitutional recognition *de minimis* uses of physical force, provided that the use of force is not of a sort repugnant to the conscience of mankind."[6]  Hudson, 503 U.S. at 9-10 (citations and internal quotation marks omitted).

The law is clear that "not . . . 'every malevolent touch by a prison guard gives rise to a federal cause of action.'"  Id. at 9 (citations omitted).  "Not every push or shove, even if it may later seem unnecessary in the peace of a judge's chambers, violates a prisoner's constitutional rights."   Id. (quoting Johnson v. Glick, 481 F.2d 1028, 1033 (2d Cir. 1973)).  Because Plaintiff's only allegation against Defendant Long is that he pushed Plaintiff forward to the door, Plaintiff's excessive force claim against Defendant Long fails as a matter of law.

B.  Eighth Amendment Claims Against Defendants Johnson and Williams.

Next, with respect to Plaintiff's excessive force claims against Officers Johnson and Williams, Plaintiff alleges that he was simply "walkin[g] right along" with Defendants, not "violat[ing] [any] law," when Defendant Johnson accused him of swinging a knife at Sergeant Everette and then rammed his face into the bars at the S-9 gate, causing him serious facial injuries. (Doc. 1 at 4; Doc. 52 at 2).  Defendants Johnson and Williams then "began beatin[g] [him] down."  (Doc. 1 at 4).

Defendants vehemently deny Plaintiff's version of the facts and maintain that they were responding to a "Code Red" alert after Plaintiff attacked Sergeant Everette at Housing Unit B, and, as they attempted to escort Plaintiff away from the housing unit toward the health care unit and the holding cell area, Plaintiff continued his violent and disruptive behavior toward them.  (Doc. 40, att. 4 at 1-2).  According to Defendant Long, Plaintiff was "very physically resistant the entire

---

6 Plaintiff has not alleged that the use of force by Defendants was "of a sort repugnant to the conscience of mankind."  Hudson, 503 U.S. at 9-10.

time locking his feet and legs to prevent movement, trying to pull and snatch away, and kicking out with his legs and feet."  (Doc. 40, att. 4 at 2; Doc. 40, att. 3 at 2).  Defendant Long repeatedly ordered Plaintiff to stop resisting and walk, and he refused.  (Doc. 40, att. 4 at 2).  Defendant Williams likewise tried to talk to Plaintiff and calm him down, but his efforts were also unsuccessful.  (Doc. 40, att. 2 at 1-2).  According to Defendants, when they approached the S-9 gate, Plaintiff screamed, "I'm not going to seg"[7] and attempted to pull away from Sergeant Williams and Officer Johnson.  (Doc. 40, att. 3 at 2).  At that time, Defendants Johnson and Long threw Plaintiff to the floor in an attempt to gain control over him, and Plaintiff finally ceased resisting.  (Id.).  Defendants deny any further use of force and deny that Defendant Johnson rammed Plaintiff's face into the bars.[8]  (Id.).

Applying the Whitley factors enumerated above, the Court must consider the threat reasonably perceived by Defendants and the need for the application of force at the S-9 gate.  If Defendants' version of the facts is true, Plaintiff's persistent, violent, and disruptive behavior toward Defendants after he was removed from the housing unit could reasonably have been perceived to be threatening and, therefore, justified the application of force to gain control of Plaintiff and restore discipline.  With respect to the amount and type of force used by Defendants, the Court recognizes that throwing an inmate to the floor while handcuffed is a serious and potentially hazardous form of physical force that could result in serious injury to the inmate.  However, if the facts presented by Defendants are true, they were faced with the dangerous task of

---

7 Sergeant Everette informed Plaintiff when he was being taken away from the housing unit that he was going to be "locked up" because of the knife that he had in his possession.  (Doc. 40, att. 1 at 4).

8 The incident report completed by Sergeant Everette indicates that Plaintiff hit his face on the curb outside of Housing Unit B before he was escorted to the health care unit by Defendants.  (Doc. 40, att. 1 at 4-5).  The statement of Correctional Officer Bennie Ashby, which accompanied the incident report, confirms that Plaintiff struck his face on the concrete curb during the altercation with Sergeant Everette.  (Id.).

gaining control of a kicking, screaming, violent, and disruptive inmate who refused to comply with repeated verbal commands to stop resisting and walk. (Doc. 40, att. 2 at 1-2; Doc. 40, att. 4 at 2). Once Plaintiff was taken to the floor and Defendants had regained control of him, they lifted him up and resumed the escort to the health care unit without any further use of force. (Id.). Such conduct, if true, evidences a good faith effort on the part of Defendants to restore discipline. Furthermore, because Defendants' action in taking Plaintiff to the floor ended his resistance quickly and effectively, it may have prevented the further use of force and additional injury to Plaintiff and the Defendants. Given the wide range of responses available to Defendants, the decision to simply take him to the floor evidences an effort on the part of Defendants to temper the severity of the response. To be sure, Defendants' version of the facts does not support Plaintiff's claim that they, totally without penological justification, maliciously and sadistically attacked Plaintiff for the very purpose of causing harm.

That being said, the Court is faced with diametrically opposed versions of the events that occurred at the S-9 gate on May 20, 2010. There is a clear dispute between the parties as to whether Plaintiff was resisting and struggling with Defendants when they approached the S-9 gate, necessitating the use of force in taking him to the floor, or whether Defendant Johnson maliciously rammed Plaintiff's face into the bars of the gate and then, along with Defendant Williams, beat Plaintiff for no reason other than to inflict pain.[9] (Doc. 40, att. 1 at 4).

For purposes of the motions for summary judgment, the Court assumes Plaintiff's allegations as true. Under Plaintiff's version of the facts, Defendant Johnson's alleged conduct in ramming Plaintiff's face into the bars when Plaintiff was simply walking along and offering no

---

9 Part of this dispute also concerns whether Plaintiff suffered the trauma to his face as a result of the altercation with Sergeant Everette or as a result of having his faced rammed into the bars by Defendant Johnson.

resistance, as well as Defendant Williams' and Johnson's alleged conduct in beating Plaintiff when he was not resisting, constituted "gratuitous force against a prisoner who has been already subdued. . . ." Skrtich, 280 F.3d at 1303. This type of unnecessary and wanton infliction of pain is prohibited by the Eighth Amendment. See Hudson, 503 U.S. at 5.

While the Court recognizes that the facts at trial may turn out differently than the facts presented on summary judgment, on the allegations as Plaintiff has presented them, Defendants Johnson and Williams appear to have violated his constitutional rights. Cf. Skrtich, 280 F.3d at 1305 (defendants not entitled to summary judgment on excessive force claims where plaintiff claimed that, "after he was rendered inert by [an] electric shock [from a stun shield] and was not resisting . . . , the officers administered a severe beating with no other purpose than the infliction of pain."); Dobbins v. Giles, 2012 WL 45397, *2 (11th Cir. 2012) (unpublished)[10] (defendant not entitled to summary judgment on plaintiff's excessive force claim where plaintiff alleged that officer "struck [him] between the eyes with his fist and slapped [him] in the face" "for no reason after he expressed an inability to transfer from his bed to his wheelchair.").

Generally, after a constitutional violation has been established, the Court considers whether the right was clearly established in order to determine whether the defendant is entitled to qualified immunity. See Saucier v. Katz, 533 U.S. 194, 201 (2001), *overruled in part*, Pearson v. Callahan, 555 U.S. 223, 236 (2009). However, as noted above, the Eleventh Circuit has held that, in cases such as this, there is no room for qualified immunity because the use of force "maliciously and sadistically to cause harm" is clearly established to be a constitutional violation. Skrtich, 280 F.3d at 1301 (citing Hudson, 503 U.S. 1 (1992), and Whitley, 475 U.S. 312 (1986)). Thus,

---

10 "Pursuant to Eleventh Circuit Rule 36-2, unpublished opinions are not considered binding precedent, but may be cited as persuasive authority." Lanier Constr., Inc. v. Carbone Props. of Mobile, LLC, 253 Fed. Appx. 861, 865 n.5 (11th Cir. 2007) (unpublished).

13

qualified immunity is not available to Defendants Johnson and Williams with respect to Plaintiff's excessive force claim arising out of the altercation at the S-9 gate.

Because disputed issues of material fact exist as to Plaintiff's excessive force claims against Defendants Johnson and Williams, the motion for summary judgment of Defendants Johnson and Williams is due to be denied.   With respect to Defendant Long, however, the Court has found that Plaintiff's excessive force claim against him fails as a matter of law; therefore, Defendant Long's motion for summary judgment is due to be granted.   Having made these findings, Plaintiff's motion for summary judgment is due to be denied in its entirety.

## V.   CONCLUSION

Based on the foregoing, the Court recommends that Defendants' motion for summary judgment (Docs. 39, 40, and 77), be **granted in part, and denied in part,** as follows:

1) The motion for summary judgment of Defendant John Long is due to be GRANTED with respect to all claims asserted against him by Plaintiff in the Complaint, and Plaintiff's action against this Defendant is due to be dismissed with prejudice; and

2) The motion for summary judgment of Defendants Russell Johnson and Anthony Williams is due to be DENIED with respect to Plaintiff's claims of excessive force asserted against them in the Complaint.

In addition, Plaintiff's motion for summary judgment (Docs. 47, 49, 53) is due to be DENIED in its entirety.

The instructions which follow the undersigned's signature contain important information regarding objections to the report and recommendation of the Magistrate Judge.

DONE this  30th of January, 2012.

/s/ Katherine P. Nelson
**KATHERINE P. NELSON**
**UNITED STATES MAGISTRATE JUDGE**

# MAGISTRATE JUDGE'S EXPLANATION OF PROCEDURAL RIGHTS AND RESPONSIBILITIES FOLLOWING RECOMMENDATION, AND FINDINGS CONCERNING NEED FOR TRANSCRIPT

l.      *Objection*.   Any party who objects to this recommendation or anything in it must, within fourteen (14) days of the date of service of this document, file specific written objections with the Clerk of this court.   Failure to do so will bar a *de novo* determination by the district judge of anything in the recommendation and will bar an attack, on appeal, of the factual findings of the Magistrate Judge.   *See* 28 U.S.C. § 636(b)(1)(C); *Lewis v. Smith*, 855 F.2d 736, 738 (11th Cir. 1988); *Nettles v. Wainwright*, 677 F.2d 404 (5th Cir. Unit B, 1982) (*en banc*).   The procedure for challenging the findings and recommendations of the Magistrate Judge is set out in more detail in SD ALA LR 72.4 (June 1, 1997), which provides that:

> A party may object to a recommendation entered by a magistrate judge in a dispositive matter, that is, a matter excepted by 28 U.S.C. § 636(b)(1)(A), by filing a 'Statement of Objection to Magistrate Judge's Recommendation' within ten days[11] after being served with a copy of the recommendation, unless a different time is established by order.   The statement of objection shall specify those portions of the recommendation to which objection is made and the basis for the objection.   The objecting party shall submit to the district judge, at the time of filing the objection, a brief setting forth the party's arguments that the magistrate judge's recommendation should be reviewed *de novo* and a different disposition made.   It is insufficient to submit only a copy of the original brief submitted to the magistrate judge, although a copy of the original brief may be submitted or referred to and incorporated into the brief in support of the objection.   Failure to submit a brief in support of the objection may be deemed an abandonment of the objection.

A magistrate judge's recommendation cannot be appealed to a Court of Appeals; only the district judge's order or judgment can be appealed.

2.      *Transcript (applicable Where Proceedings Tape Recorded)*.   Pursuant to 28 U.S.C. § 1915 and FED. R. CIV. P. 72(b), the Magistrate Judge finds that the tapes and original records in this case are adequate for purposes of review.   Any party planning to object to this recommendation, but unable to pay the fee for a transcript, is advised that a judicial determination that transcription is necessary is required before the United States will pay the cost of the transcript.

                                                                /s/ Katherine P. Nelson
                                                                **UNITED STATES MAGISTRATE JUDGE**

---

[11]  Effective December 1, 2009, the time for filing written objections was extended to "14 days after being served with a copy of the recommended disposition[.]"  Fed. R. Civ. P. 72(b)(2).

15